**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**LORRAINE K.,**

**Plaintiff,**

                                       **Case No. 1:23-cv-00285-TPK**

    **v.**

**COMMISSIONER OF SOCIAL**                   **ORDER**
**SECURITY,**

**Defendant**.

## OPINION AND ORDER

This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by an Administrative Law Judge on November 23, 2022, following a remand from this Court. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 12) and the Commissioner filed a similar motion (Doc. 14). For the following reasons, the Court will **GRANT** Plaintiff's motion for judgment on the pleadings, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I. BACKGROUND

Plaintiff protectively applied for supplemental security income on July 16, 2018 alleging that she became disabled on April 1, 2017. After initial administrative denials of her claim, Plaintiff appeared at a hearing before an Administrative Law Judge on December 5, 2019. The ALJ issued an unfavorable decision on January 2, 2020, and after the Appeals Council denied review, Plaintiff appealed to this Court. In an Opinion and Order filed on April 14, 2022, the Court remanded the case for rehearing, finding that the ALJ erred at step two of the sequential evaluation process and directing the Commissioner to "reassess[] plaintiff's impairments" and to provide "a detailed analysis of whether and to what extent plaintiff's severe _and_ non-severe impairments limit her ability to perform work-related functions...." _See_ Decision and Order in Case No. 20-CV-1469L (Tr. 744-51).

Following the remand, the ALJ held a new hearing on October 31, 2022, at which both Plaintiff and a vocational expert, Esperanza Distefano, testified. The ALJ then issued a second unfavorable decision on November 29, 2022, which dealt only with the period from Plaintiff's application date to January 3, 2020, the date on which a subsequent application for disability insurance benefits was granted.

The ALJ found, first, that Plaintiff had not engaged in substantial gainful activity since her application date. Next, the ALJ determined that Plaintiff suffered from severe impairments including coronary artery disease, hypertension, diabetes, peripheral neuropathy, and chronic obstructive pulmonary disease. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a limited range of sedentary work. She was able to meet the exertional requirements of sedentary work but could not tolerate moderate exposure to airborne irritants such as fumes, odors, dusts, gases, and smoke. Next, the ALJ determined that Plaintiff had past relevant work as a receptionist, and he found, based on the vocational testimony, that she retained the ability to perform that job. As a result, he concluded that Plaintiff was not under a disability as defined in the Social Security Act up to January 3, 2020.

In her motion for judgment on the pleadings, Plaintiff raises three issues, stated *verbatim* as follows:

1.  The ALJ erred in failing to follow the District Court's remand order.

2.  Improper substitution of the ALJ's "non-medical" judgment as a lay person over that of a doctor regarding Ms. Kupko's physical limitations.

3.  Failure to properly evaluate past relevant work under SSR 82-61 and SSR 82-62 as a composite job.

Plaintiff's memorandum, Doc. 12-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 61 years old at the time of the first administrative hearing, first testified that she had worked as a manager at a self-storage facility and later as a receptionist, a job she performed with two different companies until June of 2018. When she left the second receptionist job, she took a similar part-time position, working ten hours per week. She did not believe she could do that job on a full-time basis due to the fact that she would need to climb stairs and do other physical work not required of a part-time receptionist.

Next, Plaintiff testified that she had been diagnosed with COPD and used an inhaler twice per day. She had coronary artery disease as well and had stents placed in 2012 and 2013. Exertion made her dizzy. She was also taking insulin to treat diabetes. Plaintiff said that she had been diagnosed with major depressive disorder as well and was undergoing treatment for it. She reported that she had trouble concentrating, but she could do her part-time job because there were many days when she was not busy. She was able to relate adequately to others.

In a typical day, Plaintiff would take her dogs out, watch television, shower, go to work if it were one of her work days, and eat meals. On a day when she did not work, she watched more television. She could do dishes but hired someone to vacuum and mop. She did not go grocery shopping and did other shopping on line. Her back bothered her when she did dishes, however, and she also said she got very tired even while doing nothing during the day. Walking for more than two blocks not only hurt her back but left her short of breath. Standing was also difficult but she could sit to do her job. Reaching was made more difficult due to a torn rotator cuff. Plaintiff also said she did not socialize and often did not finish tasks that she had begun.

At the second administrative hearing, Plaintiff clarified that her work as a receptionist, before taking the part-time job, was done continuously but just for different employers who had gotten the underlying contract, and also that she had security duties as part of the job, including taking an hour each day to walk around a building and make sure it was secure. She said she had a stroke in 2020 and also continued to be short of breath from climbing stairs and walking. She was taking medication to help her sleep, and her depression caused her to be fatigued and to lose interest in what she was doing. Since the prior hearing, she had her left shoulder replaced. Before that, reaching in any direction was painful.

The vocational expert, Ms. Distefano, was asked questions about a person with Plaintiff's vocational profile who could do sedentary work without moderate exposure to airborne irritants. She said that such a person could do Plaintiff's past receptionist's work, not as it was actually performed but as described in the <u>Dictionary of Occupational Titles</u>. If that same person were limited to low-stress jobs, however, she could not do so. Being off task for more than 15% of the time would also preclude employment, as would being absent more than once per month..

## B. Medical Evidence

Some of the earlier medical evidence is summarized in this Court's 2022 Decision and Order. Concerning Plaintiff's mental impairments, the Court said:

> With respect to plaintiff's depression, the record contained mental health treatment notes reflecting regular therapy visits and management of symptoms with antidepressant medications during the relevant period (Dkt. #14 at 422-49, 473-565), as well as mental RFC opinions by consulting psychologist Dr. Janine Ippolito, and state agency reviewer Dr. S. Juriga. (Dkt. #14 at 81-94, 460-64). Dr. Ippolito examined plaintiff on October 11, 2018 and opined that, in addition to mild limitations in the areas of understanding information, using reason and judgment, and maintaining concentration and pace, plaintiff had "moderate" limitations in the ability to regulate emotions, control behavior, and maintain well-being, caused by "her emotional distress and fatigue." (Dkt. #14 at 463).

*See Lorraine K. v. Kijakazi*, 2022 WL 1115456, at *2 (W.D.N.Y. Apr. 14, 2022). The treatment records referred to in the decision show, among other things, that Plaintiff met the criteria for major depressive disorder and that her symptoms included fatigue,

inability to sleep, depressed mood, loss of interest, feeling worthless, and inability to concentrate. There do not appear to be any additional medical records concerning Plaintiff's depression.

As far as physical impairments are concerned, the treatment records consistently show diagnoses of COPD and coronary artery disease as well as elevated cholesterol and diabetes. There are also treatment records for acute illnesses.

### C.  Opinion Evidence

The consultative psychiatric examination done by Dr. Ippolito is summarized above. Plaintiff also saw Dr. Litchmore for a consultative internal medicine examination on October 4, 2018. She told him she had been diagnosed with COPD and could walk for five to ten minutes before becoming short of breath. Climbing stairs or exertion caused chest pain due to her coronary artery disease, and she reported a history of diabetes and depression as well. Plaintiff said she could cook, shop, shower, bathe, and dress herself. Her physical exam was essentially normal. Dr. Litchmore concluded that Plaintiff had marked limitations in terms of activities that required moderate physical exertion and was also limited in terms of exposure to respiratory irritants. (Tr. 451-55).

On September 18, 2018, Dr. Fiorica, a pulmonary specialist, wrote a letter noting that he had reassessed Plaintiff on that day and noted, among other things, that she was status post insertion of four coronary artery stents and that her oxygen saturation was 95% on room air. He concluded that "due to multiple medical problems, I believe she is totally and permanently disabled. She becomes dyspneic with exertion and has poorly controlled diabetes mellitus and evidence for chronic kidney disease." (Tr. 469-70). On January 29, 2022, Nurse Practitioner Downie stated that "Patient is unable to work full time due to her medical conditions." (Tr. 867).

State agency reviewers also expressed opinions as to Plaintiff's functional capacity. Dr. Brauer thought Plaintiff could do medium work without even moderate exposure to respiratory irritants. (Tr. 90-94). Dr. Juriga concluded that Plaintiff did not have any severe psychological impairments, with only mild limitations in the areas of understanding, remembering, and applying information, concentrating, persisting, and maintaining pace, and adapting and managing oneself. There were no limitations in interacting with others. (Tr. 87-88).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary

review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A. Following the Remand Order

As her first claim of error, Plaintiff argues that the ALJ erred when he found, as he did in his first decision, that Plaintiff's mental impairments were nonsevere and that they did not result in any mental limitations.  As noted above, this Court had found that these conclusions were not supported by substantial evidence and were based on legal error.  In particular, she contends that it was still error for the ALJ not to incorporate even mild mental limitations into the residual functional capacity finding, and she also takes issue with the ALJ's reasoning process in rejecting Dr. Ippolito's finding that she had a moderate limitation in her ability to regulate emotions, control behavior, and maintain well-being, pointing out that this Court had found that very reasoning to be insufficient to justify the ALJ's conclusion.  She also argues that the ALJ's reliance on Dr. Juriga's opinion that only mild mental limitations were present was improper given that there are substantial number of additional mental health records that Dr. Juriga did not have the opportunity to review.

The Commissioner responds to these arguments in a number of ways.  First, the Commissioner asserts that it was proper for the ALJ to have found Plaintiff's mental impairments to be nonsevere because that is what Dr. Juriga and the evidence both demonstrated.  The Commissioner argues that it was a reasonable interpretation of the medical records, which show that Plaintiff ultimately discontinued treatment for mental health issues and that her mental status examinations were grossly normal, to conclude that she did not have significant mental

health issues. The Commissioner contends that rejecting Dr. Ippolito's conclusion about moderate limitations was also supported by the evidence and also asserts that it is not always necessary to incorporate mild mental limitations into the residual functional capacity finding. Plaintiff, in her reply, reiterates the point that none of these arguments address the fact that the ALJ disregarded the findings and instructions made in the Court's remand order.

Here, after the Court issued its order, the Appeals Council remanded the case to the ALJ "for further proceedings consistent with the order of the court." (Tr. 739). By regulation, on remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council ..." 20 C.F.R. § 416.1477(b). It is apparent, therefore, and essentially goes without saying, that in this case it was incumbent on the ALJ to conduct the proceedings on remand in accordance with the order of this court, *see, e.g., Barbara H. v. Comm'r of Social Security*, 2024 WL 1721248, *6 (N.D.N.Y. Apr. 4, 2024), and any failure to comply with the Court's and the Appeals Council's mandate constitutes legal error. *Id*. at *7.

As Plaintiff contends, the Court's order was quite explicit in identifying the legal errors committed by the ALJ in his first decision in this case. When considering Plaintiff's arguments that the ALJ erred at step two of the decision-making process by not finding her mental impairments to be severe, the Court "concurred" with that assertion and pointed out that the rationale for discounting Dr. Ippolito's conclusion that Plaintiff had certain moderate mental limitations was insufficient. As this Court has said, "[a] mental impairment rated as 'none' or 'mild' will generally not qualify as 'severe,' whereas those rated as 'moderate,' 'marked,' or 'extreme' will qualify as 'severe' under step two." *Maureen B. v. Comm'r of Soc. Sec.*, 2023 WL 424458, at *3 (W.D.N.Y. Jan. 26, 2023). The specific reasoning process that the Court rejected was the ALJ had relied on Dr. Ippolito's statement that Plaintiff's mental impairments did not significantly interfere with her ability to function on a daily basis. The Court, however, found no tension between those two statements, and it also concluded that Dr. Juriga's review of an incomplete record to reach a contrary conclusion was not weighty enough to cure this error.

In the decision under review, the ALJ repeated his assertion that Dr. Ippolito's finding of a moderate impairment was inconsistent with her statement that Plaintiff's mental impairments did not significantly interfere with her daily functioning - exactly the rationale the Court had rejected. The ALJ did add to his analysis the statement that a finding of moderate limitations in the area of regulating emotions, controlling behavior, and maintaining well-being was not supported by Dr. Ippolito's own mental status examination, which produced only mild limitations in concentration, attention, and memory, but those are not the areas in which Dr. Ippolito found moderate limitations to exist. Dr. Ippolito had the opportunity not only to conduct a mental status exam but to review Plaintiff's treatment history, her medications, her subjective complaints, her family history, and her history of trauma, and her mode of living, none of which were discussed by the ALJ. Additionally, nothing changed about the ALJ's reasons for giving persuasive weight to Dr. Juriga's opinion, which this Court has already found to have been based on an incomplete review of the record. Overall, it is hard to see how the ALJ's decision-making process took the findings of the Court into account.

Even if the ALJ was correct in finding that Plaintiff had only mild mental limitations, this Court specifically included in its remand order language directing the Commissioner to "take[] her [Plaintiff's] mental health limitations into account." (Tr. 748). There is no indication that the ALJ did so, and the residual functional capacity finding reflects neither the mild limitations described by Dr. Juriga nor the moderate ones found by Dr. Ippolito. The Commissioner has attempted to counter this failure by noting that, in cases such as *Lynette W. v. Comm'r of Soc. Sec.*, 2021 WL 868625 (W.D.N.Y. Mar. 9, 2021), this Court did not find error in an ALJ's failure to include mental limitations in the residual functional capacity finding notwithstanding the fact that the claimant's restrictions were mild. However, in that case, the Court noted that Plaintiff had made only a skeletal argument and did not explain why the ALJ should have taken those limitations into account. *See id.* at *4. And while the Commissioner is correct that there is no hard and fast rule that such limitations be incorporated into a residual functional capacity finding, the primary case cited for that proposition noted that because the finding of no disability was based on the conclusion that the claimant was able to do unskilled work, incorporating such restrictions into the RFC finding would have been of no moment. *See Jane M. A. v. Comm'r of Soc. Sec.*, 2021 WL 63066 (W.D.N.Y. Jan. 7, 2021). That is not the case here, where that finding was based on the Plaintiff's ability to return to a semi-skilled occupation. And in any event, the ALJ disregarded the Court's clear directive to include such limitations in the RFC finding. That is the law of the case and is binding on the Commissioner. Further, it stands to reason, as this Court also concluded, that the presence of mild limitations in three separate areas of functioning - or perhaps a moderate limitation in one of them - could impact Plaintiff's ability to do her past relevant work. For all of these reasons, the Court finds Plaintiff's first claim of error to be well-taken.

## B. Physical Limitations

As her next claim of error, Plaintiff argues that the ALJ improperly derived the physical residual functional capacity finding by using his own lay judgment in the absence of any medical evidence supporting that finding. Plaintiff notes that the ALJ declined to accept Dr. Brauer's determination that she was capable of performing medium work and contends that although the ALJ purported to base his finding on the opinion of Dr. Litchmore, that opinion was too vague to constitute a proper basis for that finding. If that were so, there was no medical evidence left upon which to formulate a physical RFC. The Commissioner responds that Dr. Litchmore's opinion as to Plaintiff's physical limitations was properly supported and consistent with the record, but does not directly respond to the contention that it was not possible to determine, due to the vague nature of Dr. Litchmore's statements, exactly what functional capacity Plaintiff possessed.

There is no question that Dr. Litchmore did not describe with any specificity what he thought Plaintiff could do. His exact statement, apart from his conclusions with respect to respiratory irritants, was this:

On the basis of the physical examination, the claimant will have marked limitation in terms of activities that require moderate to marked physical exertion

in the context of her uncontrolled diabetes as well as her critical coexisting
coronary artery disease which include grade 2 angina.

(Tr. 454). It is difficult to see how that statement translates into any specific ability to sit, stand,
walk, lift, or carry. Although the Commissioner is correct that a residual functional capacity
finding need not mirror any specific medical opinion of record, the ALJ purported to rely on Dr.
Litchmore's opinion (stating that it was "factored into" the RFC finding, Tr. 663), but he did not
explain how it supported a finding that Plaintiff could perform a full range of sedentary work
with environmental restrictions. On remand, this issue would benefit from further development
of the record.

### C. Past Relevant Work

Plaintiff's final contention is that the ALJ did not properly evaluate the evidence
concerning Plaintiff's work as a receptionist. She points out that, according to her testimony,
that job did not conform to the definition of receptionist in the Dictionary of Occupational Titles
because she had to walk around the perimeter of the building in which she worked doing a
security check, and that she also served food and beverages during certain events, neither of
which duties are included in that definition. She asserts that the ALJ should have found her past
relevant work to be a "composite job" and argues that because she could no longer do some of
the duties of that job, she is entitled to benefits. The Commissioner argues, in turn, that the ALJ
was entitled to find that Plaintiff's past work was properly characterized as receptionist and that
the ALJ was therefore entitled to rely on the vocational testimony that a person with her residual
functional capacity could do the job as usually performed in the national economy.

The ALJ determined that Plaintiff had done two jobs which qualified as past relevant
work: her job with Experience Works, Inc., which she performed from January to June, 2016,
and her job with Vermont Associates for Training and Development, Inc., which she performed
from September through December, 2017. (Tr. 665). According to Plaintiff, that was actually a
single job performed for two different employers, and she had the security duties and food
service duties for that job. It appears that the ALJ made a determination, without inquiring of
the vocational expert, that the job was simply a receptionist position as opposed to a composite
job. Under Social Security regulations, "composite jobs [are those which] have significant
elements of two or more occupations and, as such, have no counterpart in the DOT." *See*
SSR 82-61. This issue, too, does not appear to have been fully developed, and on remand the
ALJ should, if necessary, make a specific determination, with input from a vocational expert if
needed, as to whether Plaintiff's past work was or was not a composite job.

### D. Remand

Plaintiff has requested, if the Court finds her claims of error to have merit, that the case
be remanded for an award of benefits rather than for additional administrative procedures. She
argues that if she is found to have mild mental limitations, those would rule out the ability to do
her past work and she would automatically be entitled to an award of benefits. The

Commissioner responds by essentially arguing that the ALJ did not commit reversible error and there is therefore no basis for an award of benefits.

Plaintiff's position is primarily based on her belief that there was vocational testimony to the effect that someone who had even mild mental limitations could not do a semi-skilled job. However, the testimony she cites was given in response to a hypothetical that the individual in question was limited to the performance of low-stress jobs which involved only simple, routine, and repetitive tasks, simple work-related decisions, and only occasional changes in the workplace. (Tr. 706). It is not clear that, even if the ALJ had formulated a residual functional capacity which incorporated mild mental limitations, that would equate to such a limitation. It is a better exercise of the Court's discretion in this area, despite the age of the case, to remand for further proceedings that take the errors identified in this Order into account, and to allow the Commissioner to make a new determination as to disability.

## V. CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 12), **DENIES** the Commissioner's motion (Doc. 14), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**